# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**DERRICK LAMONT NELSON,**       )

      **Movant/Defendant,**       )

v.                               )   **2:11-cr-114-JHH-JEO**
                                     **2:12-cv-8033-JHH- JEO**
**UNITED STATES OF AMERICA,**    )

      **Respondent.**       )


## MEMORANDUM OPINION

The court has before it Movant Derrick Lamont Nelson's Motion (Doc. #1) to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed on August 9, 2013. Nelson filed an Addendum to his Motion (Doc. # 4) on September 14, 2013. Pursuant to the court's order of September 17, 2013 (Doc. # 3), the United States Government filed a Response (Doc. #5) in opposition to Nelson's Section 2255 Motion on October 17, 2013. In its response, the Government seeks to have the Motion to Vacate (Doc. #1) dismissed in its entirety, without an evidentiary hearing.[1] (See Doc. #5.) Movant filed a Reply (Doc. #10) in support of his Motion on December 17, 2013.

---

[1] The Government attached the affidavit of John A. Lentine to its response.

After careful consideration of all the argument presented by Nelson and the Government, as well as the applicable law in this Circuit, the court concludes that the Motion (Doc. #1) to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is due to be dismissed in its entirety for the following reasons.

**I. Background**

In March 30, 2011, a federal grand jury returned a three-count indictment against Derrick Lamont Nelson charging him with distribution of cocaine base, distribution of more than 28 grams of cocaine base, and possession a firearm after having been convicted of a felony. (Doc. #1.) At his arraignment on April 14, 2011, Nelson pleaded not guilty. (See docket sheet.)

On May 3, 2011, the Government filed an Information (Doc. #12) to Establish Prior Conviction pursuant to 18 U.S.C. § 851. That Information stated that Nelson committed the crimes charged in Counts One and Two of the Indictment after having been convicted of unlawful possession of cocaine in October 1994 in the District Court of Jefferson County, Alabama. (Id.) The Information further stated that such conviction constituted "a prior conviction for a felony drug offense" for the purpose of an enhanced penalty under 21 U.S.C. § 851 (B)(1)(B) and (C) and 21 U.S.C. § 851(a). (Id.)

On May 25, 2011, a hearing was held wherein Nelson pled guilty, without a

2

plea agreement, to all three counts in the Indictment. During that hearing, a Guilty Plea Advice of Rights (Doc. #13) was filed, containing Nelson's initials on every page and signature at the end, as well as a certification from his attorney. In the Advice of Rights, as relevant to the instant Motion, Nelson acknowledged that his attorney explained to him, in detail, and that he understood, the mandatory minimum sentence provided by law. (Id.)

At the beginning of the plea hearing, the court placed Nelson under oath. (Doc. # 39 at 3.) The court then told Nelson to interrupt the proceedings to ask questions if anything occurred during the hearing that he did not fully understand:

> **The Court:** Mr. Nelson, if anything is said here today that you do not fully understand, or if anything takes place in this courtroom that you do not fully understand . . . , I want you to interrupt the proceedings. Just ask me to stop the proceedings and ask me to clear the matter up or ask me to give you the opportunity privately to talk to Mr. Lentine so that he can clear the matter up. Do you understand?
>
> **Nelson:** Yes, sir.

(Id.) The court then addressed Nelson and addressed the maximum and minimum possible criminal penalties that he could face by pleading guilty. Before explaining those penalties, the court distributed a copy of the Information (Doc. #12) to Nelson, Mrs. Lentine and the attorney for the United States, that had been filed on May 3, 2011. (Doc. # 39 at 5.) Again, the court told Nelson to stop him if the court was

3

going too fast or if there was anything he needed to stop and talk to Mr. Lentine about. (Id. at 5-6.) Nelson replied, "Yes, sir." (Id. at 6.) The court continued speaking to Nelson, as follows:

> **The Court:** Mr. Nelson, in addition to the three-count indictment filed against you, . . . the government filed on May 3, 2011, an information advising you and the Court that when you committed the offenses charged in Counts 1 and 2 – this does not pertain to Count 3. When you committed the offenses charged in Counts 1 and 2, you had on or about October 12 of 1994 been convicted of unlawful possession of cocaine in the District Court of Jefferson County, Alabama, in Case Number DC-94-1994.
>
> If this information filed May 3rd is correct, the maximum sentence which could be imposed under Count 1 would be a custodial sentence of not more than 30 years, a fine of not more than $2 million, and a term of supervised release of not less than 6 years.
>
> If that information is not correct, the maximum custodial sentence for Court 1 would be not more than 20 years, the maximum fine would be $1 million, and the term of supervised release would be not less than 3 years.
>
> Further, if the information filed on May 3, 2011, is correct, the maximum sentence which could be imposed under Count 2 would be a custodial sentence of not less than 10 years and not more than life imprison and a fine of not more than $8 million and a term of supervised release of not less than 8 years.
>
> If that information is not correct, the maximum custodial sentence for Count 2 would be not less than 5 years and not more than 40 years. The maximum fine would be $5 million, and a term of supervised release of not less than 4 years.

> . . .
>
> Do you understand those to be the very maximum and any minimum sentences that apply to these cases?
>
> **Nelson:**   Yes, sir.

(Id. at 6-7.)

The court next inquired whether Nelson had a sufficient opportunity to discuss these maximum and minimum penalties with his attorney. (Id. at 7.) Nelson replied that he had, and Nelson's attorney, Mr. Lentine, replied the same. (Id. at 7-8.) The court also inquired as to whether there was any reason why Nelson could not understand anything that he had outlined, or anything Mr. Lentine had discussed with him. (Id. at 9.) Nelson replied "No, sir." (Id.)

At this point, the court explained the indictment to Nelson and ensured that Lentine had been given ample time to fully investigate the charges and generally counsel Nelson. (Id. at 9-13.) The court also explained the elements of each charge and what the government would have to prove at trial. (Id.) The court then had the government outline the facts that it expected to prove if there was a trial of the case. (Id. at 13-17.) When the government finished outlining the facts, Nelson agreed that they were substantially correct. (Id. at 17.) Nelson acknowledged that he was not required to plead guilty to the charges, and understood that he was free to withdraw

his plea and maintain his innocence. (Id.) However, he stated that he still wanted to plead guilty, and the court accepted his guilty plea and set the matter for sentencing. (Id. at 17-18.)

After disclosure to the parties, Nelson's attorney filed objections (Doc. # 16) to the Presentence Investigative Report (PSR) on August 23, 2011, and the government responded (Doc. #17) to those objections on September 8, 2011.

A sentencing hearing was held before the court on September 12, 2011. At the sentencing hearing, the court ruled on Nelson's objections to the PSR, and sentenced Nelson to the statutory minimum of ten years imprisonment. (Id. at 20.) Nelson did not appeal.

## II. Discussion

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 ¶ 1. It is well settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

Nelson centers his petition on claims that his counsel was ineffective, and

makes two claims of ineffectiveness.[2]  Specifically, Nelson first contends that his attorney improperly argued an objection to the sentencing guidelines.  Second, Nelson argues that his attorney failed to advise him of the notice of enhancement under 18 U.S.C. § 851 before he pled guilty and failed to contest the § 851 notice.

Ineffective assistance of counsel claims are governed by the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the Supreme Court established a two-prong test for adjudicating ineffective assistance of counsel claims.  Both prongs of the test must be met for the petitioner to succeed.  <u>Id.</u> at 687.  First, Nelson must show that counsel's performance was deficient, i.e., outside the range of professionally competent assistance.  <u>Id.</u>  The proper measure of an attorney's performance is "reasonableness under prevailing professional norms."  <u>Id.</u> at 688.

---

[2] Nelson also makes a myriad of claims (without argument) in his addendum (Doc. #4) that he does not address in his original Motion.  Included in those claims are the following: (1) "Counsel for the Petitioner was constitutionally ineffective for failing to adequately contest and argue the <u>Simmons</u> issue whereas the Petitioner did not do a[t] least a year and or was it a prerequisite for enhancement purposes of a prior conviction." (<u>Id.</u> at 3); (2) "Deficient performance for failing to advise the Petitioner that drug quantity, and drug identity were elements of the said offense." (<u>Id.</u> at 5.)  Both claims fail.

Although Nelson does not give a citation for which <u>Simmons</u> case he relies upon, the court surmises it is <u>United States v. Simmons</u>, __ U.S. ___, 130 S.Ct. 3455 (2011).  Under <u>Simmons</u>, the Supreme Court held that for a prior conviction to qualify as a predicate under the Career Offender Guideline § 4B1.1, the offense of conviction must have been punishable by a term of imprisonment exceeding one-year.  This argument is inapplicable to Nelson as he was not sentenced as a career offender, but instead sentenced to the statutory minimum.  Regardless, Nelson confuses "potential punishment" with his "actual punishment" and the guideline is based on the potential statutory sentence for the offense.  As to the second contention, the court clearly outlined the elements of the offenses with Nelson before he changed his plea from not guilty to guilty. (Doc. #39 at 9-13.)

Unless the petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he cannot show that counsel's performance was constitutionally deficient. Id. at 689.  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  [The court asks] only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."  White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992); see also Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance").[3]

Second, Nelson must establish prejudice, such that there is a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 687; Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  Because the petitioner must meet both parts of the test, the court does not need to address the performance prong if the petitioner cannot meet the prejudice prong, and vice versa.

---

[3] In fact, the Supreme Court has warned against second-guessing professional judgments made by counsel: "Judicial scrutiny of counsel's performance must be highly deferential," and court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct hte circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689.

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

The Supreme Court has held that Strickland's two-part test also applies to "challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). Hill held that to establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The Eleventh Circuit has held that "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir.1984). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." Id.

**A. Objections to the PSR**

Nelson contends that two points were wrongfully added to his sentencing guideline calculation under U.S.S.G. § 2D1.1(b)(1) for a dangerous weapon being present during the commission of the underlying drug offense. He argues that he had

9

licenses to possess each of those firearms (which has never been disputed by the Government), and that his attorney was ineffective in failing to raise this issue at sentencing.

Nelson's argument fails. Although his attorney raised this issue in his objections to the PSR (Doc. #16), the objection had no impact on the ultimate sentence Nelson received. Nelson was sentenced to the ten year statutory mandatory minimum sentence. As such, whether or not these two points were added to his guideline calculation, their addition (or lack thereof) would not affect his sentence in any way. Therefore, Nelson cannot establish prejudice under Strickland. See Strickland, 466 U.S. at 687; Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000).

**B. Section 851 Enhancement**

Nelson contends that his attorney never informed him about the Information filed pursuant to 21 U.S.C. § 851 by the Government which increased his statutory mandatory minimum sentence from five years to ten years. Nelson contends that he would not have pled guilty if he had known about the potential increase to his sentence.

Nelson's argument fails. Regardless of whether Nelson's counsel discussed

the Information and its impact on his potential sentence with Nelson,[4] the record is clear that Nelson had been told about the Information and that its potential impact on his sentence had been discussed with him before he pled guilty. As recounted in detail above, th court passed out a copy of the Information to Nelson, his attorney and the attorney for the United States before it began its discussion of the minimum and maximum sentences. (Doc. # 39 at 5.) The court then explained the Information to Nelson and laid out in detail how that Information would impact any potential sentence, if Nelson pled guilty. (Id. at 6-7.) The court twice told Nelson to stop the proceedings at any time if anything was said that he did not understand or if he wanted to discuss anything with his counsel. (Id. at 3, 5-6.) Nelson never stopped the proceedings, and after the court discussed the possible sentences based on the Information, Nelson told the court that he understood the maximum and minimum sentences and that he had ample time to discuss the possible sentences with counsel. (Id. at 7-8.) He further stated that there was no reason for him to not understand any of the discussions with the court or his attorney. (Id. at 9.)

Based on the above, the court concludes that Nelson has not established deficient performance on behalf of his attorney or prejudice. For all the foregoing reasons, Nelson's Motion (Doc. #1) to Vacate, Set Aside, or Correct Sentence and

---

[4] Lentine denies this allegation in his affidavit. (Exh. 1 to Doc. #5.)

Addendum (Doc. #4) are due to be denied.  A separate order will be entered dismissing the case in its entirety.

    **DONE** this the ___8th___ day of January, 2014.

_____
SENIOR UNITED STATES DISTRICT JUDGE